IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
OF PANOLA COUNTY, MISSISSIPPI

FILED
FEB 2 4 2015
MELISSA MEEK-PHELPS
CIRCUIT CLERK

KATIE TOLBERT          PLAINTIFF

v.          CIVIL ACTION NO. _CV2015-14SM_

KYNLI HINDMAN and
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.          DEFENDANTS

## COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW, Plaintiff, Katie Tolbert (hereinafter Tolbert), by and through her attorneys, and for her causes of action against Defendants, Kynli Hindman (hereinafter Hindman) and State Farm Mutual Automobile Insurance Co. (hereinafter State Farm), states as follows:

1. Plaintiff is an adult resident of Panola County, Mississippi.

2. Defendant, Hindman, is a resident of the First Judicial District of Panola County, Mississippi residing at 3147 Cold Spring Road, Sardis, MS 38666 where she may be served with process as an infant by serving her separately and also serving any one of the following: her mother, or father, or guardian, or the person having care of said infant, or with whom she lives.

3. Defendant, State Farm, is a foreign corporation authorized to do business in the State of Mississippi. State Farm has designated as a matter of law its registered agent for service of process as the Commissioner of Insurance for the State of Mississippi.

EXHIBIT A

4. On July 13, 2014, Defendant Hindman negligently operated a 2000 Nissan Altima automobile by failing to yield at the intersection of Highway 278 and Central Academy Road, proximately resulting in her driving the 2000 Nissan Altima into the side of a 2003 Nissan Altima owned and being operated by Plaintiff and proximately resulting in Plaintiff's personal injury damages including lost wages, medical expenses of $7967.49, as well as pain and suffering and the property damage to her automobile for a total of $50,000.00 compensatory damages.

5. Defendant Hindman was at all times relevant herein operating an uninsured motor vehicle as that term is defined by applicable Mississippi law; she was acting as an uninsured motorist in so operating that vehicle. Plaintiff was the owner and driver of an insured vehicle; the vehicle operated by Plaintiff had uninsured motorist coverage available. The uninsured motorist coverage available was $25,000.00 which amount should be added to an additional vehicle providing uninsured motorist coverage to Plaintiff. (See *Exhibit A-1*, the two insurance coverage cards showing coverage for each vehicle from January 15, 2014 to July 25, 2014 for the 2003 Nissan Altima and January 30, 2014 to July 30, 2014 for the Nissan Rogue.) The total amount of such uninsured motorist coverage was $50,000.00. Plaintiff is legally entitled to recover damages from the uninsured motorist insurance coverage provided by State Farm because of Defendant Hindman's negligent operation of the 2000 Nissan Altima which proximately resulted in damage to Plaintiff.

2

6. Plaintiff is entitled to recover damages from Defendant State Farm because Mississippi statutes provide her such coverage under the facts as previously and subsequently alleged:

    (1) Plaintiff is and was at all times relevant herein an insured within the meaning of Mississippi statutory law.

    (2) Plaintiff's injury was caused by an uninsured motorist tort feasor-- in the instant case having no liability coverage at all.

    (3) Plaintiff is legally entitled to recover damages from Defendant, the uninsured motorist.

    (4) State Farm had coverage available to cover the loss.

7. Defendant State Farm has denied liability to Plaintiff on the basis that she had no uninsured motorist coverage in effect at the time of the accident. Specifically, Defendant has refused to pay without a legitimate or arguable reason saying the following:

    Policy status and coverage have not been verified from Company records.

    Company records indicate the policy expired for non-payment of renewal premium.
    Company records indicate the policy was out-of-force on the date of the accident because of late payment of renewal premium.

    Company records indicate the policy expired prior to the accident date and was not put back in force until after the accident date.
    (Please see attached State Farm letter, *Exhibit A*.)

8. The Defendant has falsely stated with scienter that premium payments were made incorrectly and falsely stated with scienter that they did not receive information as to payments of these premiums. Significantly the payment of

3

these premiums was in connection with the State Farm program maliciously designed to provide a Payment Plan Agreement which could be used to State Farm's benefit to confuse an insured and necessitate authorized consultation with an explanation by the State Farm agent. (See State Farm Payment Plan Agreement, *Exhibit B*.)

9. State Farm further states and specifically authorizes its local agents to explain any questions or problems or confusion as to proper times and amounts to make these payments, stating as follows:

> As always you can contact your agent with questions and discuss additional billing and payment options at State Farm.
> (See *Exhibit C*, attached hereto.)

10. When the State Farm Payment Plan Agreement and the so called Cancellation and Non-renewal Notices together with the policies themselves are considered individually and separately, State Farm has created a method in which a local agent is directly authorized to advise and the local customer is directly encouraged to seek and be advised as to exactly how to make and the effect of payment. This was what was done in the instant case, resulting in State Farm's refusal to pay being incorrect.

11. In the instant case, none of the reasons cited for Initial Denial are valid since the necessary payments or necessary reinstatement all were made within the authority of State Farm's duly authorized agent, Amelia Brown (hereinafter Amy). Plaintiff contacted Amy to advise her that Plaintiff wanted to continue having automatic withdrawals from her checking account sent and handled the same

4

way with a new bank. Plaintiff gave Amy a void check for the new bank— Regions. Amy promised Plaintiff that she (Amy) would take care of the request but later admitted that she must have made a mistake. The reason for that admission was that the two car policies' and the home owner's policies' premiums were said by State Farm to have not effected the coverage requested.

12. After the accident, when Plaintiff first learned that the setting up of the continuation of the automatic withdrawals from the bank and transfers of any monies to State Farm Payment Plan Agreement had caused State Farm to initially say they were not liable, Amy told Plaintiff that according to the various documents, a payment could be made, reinstating coverage effective in January and resulting in coverage being in effect on the date of the July 13, 2014 accident.

13. Later, State Farm claims personnel falsely stated that they heard nothing from Plaintiff concerning relevant coverage premiums until July— after the accident. The letter states as follows:

> Please find enclosed the (2) cancellation notices that were sent to Katie Tolbert. Ms. Tolbert was sent a cancellation notice December 11, 2013 for which she made a payment. She was sent another cancellation notice Jan. 7, 2014 for which we received no further payment until after the accident on July 13, 2014.
> (See *Exhibit D*.)

14. In fact, two receipts for payments from State Farm's Payment Plan Agreement were made in January. (See *Exhibits E, F,* and *G*, attached hereto.)

15. This long, complicated and deliberately confusing defense and procedure are evidence of State Farm's bad faith. State Farm's representations that its agents

5

have the authority to do the things that were done here so confusion would not result and missed payments be made were deliberate lies. This State Farm Payment Plan together with the authorizations to the agents are intentionally not being recognized in this case and presumably are not recognized in any other similar case. In short, State Farm has presumably developed a scheme to commit bad faith under similar circumstances and to attempt to avoid liability for legitimate claims by genuine insureds who had conferred with honest agents whose veracity was later denied by State Farm itself.

16. State Farm therefore is liable for breach of its uninsured motorist contract with resulting actual damages of $50,000.00 and, because of its malicious and bad faith breach with accompanying malicious and surreptitious scheme, entitling Plaintiff to punitive damages of $500,000.00.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment of, from, and against the Defendants for compensatory damages of $50,000.00. Plaintiff further seeks punitive damages from the Defendant, State Farm, in the amount of $500,000.00, together with all costs herein.

RESPECTFULLY SUBMITTED, this the 24th day of February, 2015.

KATIE TOLBERT
Plaintiff

BY: /s/ Wm C Walker
WILLIAM C. WALKER, JR.

6

<u>ATTORNEYS FOR PLAINTIFF</u>:
William C. Walker, Jr., Esquire, MSB #6893
Post Office Box 1115
Oxford, MS 38655
(662) 234-8074

Jay Westfaul, Esquire
Post Office Box 977
Batesville, MS 38606
(662) 563-8482